IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KATHRYN ELAINE SCHWARTZ     *
    *
v.     *     Case No. GLR-13-0400
    *
COMMISSIONER, SOCIAL SECURITY     *
    *

*************

# REPORT AND RECOMMENDATION

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' dispositive cross-motions[1] and to make recommendations pursuant to 28 U.S.C. § 636(b) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions. ECF Nos. 13, 15. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Ms. Schwartz's motion be denied.

Ms. Schwartz applied for Disability Insurance Benefits on November 23, 2009, alleging a disability onset date of August 4, 2008. (Tr. 121-24). Her claim was denied initially on June 11, 2010, and on reconsideration on November 3, 2010. (Tr. 67-70, 73-74). An Administrative Law Judge ("ALJ") held a hearing on October 13, 2011, (Tr. 41-62), and subsequently denied benefits to Ms. Schwartz in a written opinion, (Tr. 23-40). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of the agency.

---

[1] Ms. Schwartz's motion is entitled "Motion for Judgment on the Pleadings." ECF No. 13. The Commissioner filed a "Motion for Summary Judgment." ECF No. 15.

The ALJ found that Ms. Schwartz suffered from the severe impairments of anxiety, depression, and personality disorder. (Tr. 28). Despite these impairments, the ALJ determined that Ms. Schwartz retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except she is limited to simple routine unskilled jobs, SVP 1-2; able to attend tasks and complete schedules; low concentration, stress and memory work, meaning work that involves 1-2 step tasks and no production rate work; no decision making or changes in the work setting; and jobs with little interaction with the co-workers, supervisors or the public, jobs that can be done with things rather than people. She can lift 10 pounds frequently and 20 pounds on occasion, stand for 30-40 minutes, and sit for 30-40 minutes consistently and on an alternate basis, should avoid heights, hazardous machinery, temperature and humidity extremes, and kneeling, and jobs should not require good audio acuity.

(Tr. 30). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Ms. Schwartz could perform, and that she was not therefore disabled. (Tr. 35-36).

Ms. Schwartz disagrees. She asserts two primary arguments in support of her appeal: (1) that the ALJ erred in assigning weight to her various medical sources; and (2) that the ALJ erred in making an adverse finding regarding the credibility of her testimony. Each argument lacks merit.

Ms. Schwartz's first argument is that the ALJ erred by assigning too little weight to her treating and examining physicians, and by relying instead on a single non-examining state agency physician. Pl. Mot. 11-19. This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the ALJ's decision meets that standard.

Specifically, Ms. Schwartz objects to the assignment of "little weight" to the opinions of her treating mental health provider, Dr. Patricia Sullivan. Pl. Mot. 12-17. A treating physician's

2

opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (refined by 20 C.F.R. § 416.927(d)(2) (1999)). Dr. Sullivan has treated Ms. Schwartz for her mental health conditions since 2003, and while Dr. Sullivan opines that Ms. Schwartz's limitations began in 2003 and have been chronic and unsuccessfully controlled by medication, the ALJ cited the fact that Ms. Schwartz remained employed as a bookkeeper until 2008, when the family business for which she had worked closed.[2] (Tr. 31, 206). The ALJ also noted the relative infrequency of treatment by Dr. Sullivan. Dr. Sullivan suggests that she sees Ms. Schwartz only every three months because she "lives [a] long distance away." (Tr. 199).[3] However, nothing in the record indicates that Dr. Sullivan believed more frequent treatment would be helpful or necessary. The ALJ also relied on the fact that Dr. Sullivan had opined that Ms. Schwartz suffered from below average intellectual functioning, which was belied by her past work as a bookkeeper and results during testing in her consultative examination with Dr. Alan Peck that showed she was "quite bright[.]" (Tr. 32, 217). Finally, the ALJ summarized some of Dr. Sullivan's own treatment notes, which suggested a far higher level of functioning than Dr. Sullivan had suggested in her opinion forms. (Tr. 32). In light of the

---

[2] Ms. Schwartz alleges that her employment history does not establish ability to maintain employment because her family afforded her significant accommodations and a "sheltered workshop environment." Pl. Mot. 16. However, the record is clear that Ms. Schwartz worked for three years (at an unknown point in time) for a competitor company, and returned not because of an inability to perform the work, but because her family needed her help. (Tr. 44-45). When the family business closed due to the economic downturn, Ms. Schwartz "filed applications everywhere [she] could and still was unable to find employment." *Id.*

[3] In her consultative examination with Dr. Peck, Ms. Schwartz reported that she sees Dr. Sullivan only twice per year due to insurance issues. (Tr. 216). Regardless of the reason for the gaps between visits, as noted above, Dr. Sullivan did not recommend more frequent sessions. Moreover, the ALJ cannot be said to have penalized Ms. Schwartz for her inability to afford treatment, as he considered the infrequency of treatment as only one small part of his overall credibility analysis.

substantial evidence undermining the allegations in Dr. Sullivan's opinion forms, remand is unwarranted.

Ms. Schwartz further objects to the assignment of "little weight" to the opinions written by her primary care physician, Dr. Eric Hermansen. Pl. Mot. 17-18. The ALJ reduced the weight afforded to the mental health limitations suggested by Dr. Hermansen not only because of his specialty in internal medicine, but because there were "limited treatment records" that "primarily concern prescriptions for the claimant's hypertension" and no records of "any type of mental examination of the claimant." (Tr. 34). While Ms. Schwartz contends that Dr. Hermansen supported his opinions by noting that she "consistently demonstrated a flat affect, a depressed mood," Pl. Mot. 18, in fact, that clinical finding from a single visit appeared only on a single form. (Tr. 207). Dr. Hermansen's other opinion form cites no clinical findings or laboratory and diagnostic test results to corroborate his opinions. (Tr. 319-20). Therefore, despite his status as a treating physician, Dr. Hermansen's opinion regarding her mental health impairments did not contain sufficient substantiation to merit controlling weight.[4]

Ms. Schwartz next contends that the ALJ did not afford sufficient weight to the GAF score of 25 that was assigned by the consultative examiner, Dr. Alan Peck. Pl. Mot. 18-19. "[A] GAF score is not determinative of whether a person is disabled. "Rather, the Social Security Administration does not endorse the use of the GAF in Social Security and SSI disability programs, and it does not directly correlate to the severity requirements in the mental disorders listings." *Melgarejo v. Astrue,* No. JKS 08–3140, 2009 WL 5030706, at *2 (D. Md. Dec. 15, 2009) (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50746, 50764–65 (Aug. 21, 2000)). The ALJ in fact summarized the notes

---

[4] Dr. Hermansen also made findings relating to Ms. Schwartz's physical capacities. Ms. Schwartz does not appear to challenge the ALJ's assignment of weight to those findings, since she addresses only her mental health impairments in her motion. Pl. Mot. 17-18.

4

from Dr. Peck's consultative examination in detail, including the GAF score he assigned. (Tr. 31-32). While portions of Dr. Peck's consultative examination notes arguably might support a finding of disability, other portions, such as those cited by the ALJ, support a greater functional capacity. (Tr. 215-18); *see, e.g.,* (Tr. 215) ("She was able to talk quite openly with me and seemed to grasp some of the concepts that we were talking about."); (Tr. 217) ("She was oriented to time, place, and person. Memory was good. Intellectually she seemed quite bright and could do the serial sevens."). Based upon that record, and the fact that GAF scores are not determinative, it appears that the ALJ appropriately considered the information provided by Dr. Peck.

Ms. Schwartz submits that the ALJ credited only the report from a single non-examining state agency psychologist, Dr. Boyer. Pl. Mot. 14-15. In support of her argument for remand, she cites cases suggesting that a non-examining physician's report cannot alone constitute substantial evidence when it is contradicted by all other evidence of record, and where the non-examining physician has not reviewed sufficient evidence of the claimant's limitations. *Id.* Those cases do not govern Ms. Schwartz's case, because Dr. Boyer's report is not the only substantial evidence cited in support of the ALJ's determination. The ALJ also assigned "little weight," not "no weight," to the findings from Dr. Peck's consultative examination, and "little weight" to "some weight" to the opinions from Drs. Sullivan and Hermansen. (Tr. 33-34). Moreover, in addition to that opinion evidence, the ALJ cited to specific treatment records and to activities of daily living to substantiate his conclusions. (Tr. 31-34). Under the substantial evidence standard, which does not require this Court to reweigh the evidence of record, I recommend that the ALJ's determination be affirmed.

Ms. Schwartz next argues that the ALJ failed to properly assess her credibility. The

Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints, such as the limiting effects of an impairment. *See Craig v. Chater*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [his] ability to work." *Id.* at 595. The ALJ followed that process in this case. Moreover, due to the opportunity to observe the claimant's demeanor in assessing credibility, "the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir. 1984).

The ALJ determined that Ms. Schwartz's testimony about the severity and limiting effects of her symptoms was not credible. In support of that conclusion, the ALJ noted that Ms. Schwartz continues to look for a job, has not had an increased frequency of visits to her treating physician, and has not required inpatient treatment or additional therapy or counseling. (Tr. 32). The ALJ further cited to specific treatment notes from Ms. Schwartz's treating physician, Dr. Sullivan, supporting the notion that her symptoms were relatively well-controlled with medication. *Id.* (citing treatment records showing that Ms. Schwartz is "goal oriented," reported depression as "not as bad" despite a two-week hiatus from medication, and reports of "feeling much better" during sessions occurring only once every three months). The ALJ noted that Ms. Schwartz's activities of daily living, which included caring for a daughter and pets, maintaining a relationship with a live-in boyfriend, performing personal care independently, shopping in stores occasionally, and communicating effectively with doctors, indicate that Ms. Schwartz's symptoms are less significant than she alleges. *Id.*; *see* (Tr. 152-59, 168-75). Again, this Court's role is not to reweigh the evidence that has been considered by the ALJ. *See Hays v. Sullivan*,

907 F.2d at 1456. The cases cited by Ms. Schwartz, Pl. Mot. 22, are inapposite because the ALJ did not rely exclusively on her reported activities of daily living to substantiate his conclusion, but also used her treatment notes and medical history.[5] Because here the ALJ supported his decision with substantial evidence, remand is unwarranted, and I recommend that the ALJ's decision be affirmed.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. The Court GRANT Defendant's Motion for Summary Judgment (ECF No. 15); and

2. the Court DENY Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) and CLOSE this case.

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: September 20, 2013                                     /s/
                                                    Stephanie A. Gallagher
                                                    United States Magistrate Judge

---

[5] Further, evaluating individual's activities of daily living in assessing their ability to perform any substantial gainful activity requires fact finding specific to that individual. *See Valley v. Astrue*, 3:11-CV-260-HEH, 2012 WL 3257861, at *15 (E.D. Va. June 22, 2012), *report and recommendation adopted*, 3:11CV260-HEH, 2012 WL 3257876 (E.D. Va. Aug. 8, 2012) (citing *Totten v. Califano*, 624 F.2d 10, 12 (4th Cir. 1980)). The cases therefore do not establish that activities of daily living can never support a claimant's ability to work.